# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### VALDOSTA DIVISION

**JENNY I. MORALES,**

       Plaintiff,

v.

       Civil Action 7:08-CV-156 (HL)

**GEORGIA DEPARTMENT OF HUMAN RESOURCES, DIVISION OF FAMILY & CHILDREN SERVICES,**

       Defendant.

## ORDER

This case is before the Court on Defendant's Motion for Summary Judgment (Doc. 30). Plaintiff, Jenny I. Morales, has filed a response, and Defendant has filed a reply. After reviewing the briefs, affidavits, depositions, and other evidence, Defendant's Motion for Summary Judgment is granted.

## I.    BACKGROUND

Plaintiff began working for the Lowndes County Department of Family and Children Services (the "Lowndes DFCS" or the "DFCS") on April 16, 2007, as an Error Control Specialist. Plaintiff's employment was terminated on September 16, 2008.

Plaintiff filed this action on November 28, 2008, alleging violations of the Rehabilitation Act of 1973, 29 U.S.C. § 794, based upon alleged disability discrimination, failure to provide reasonable accommodations, and retaliation. Defendant has moved for summary judgment, as it contends Plaintiff failed to

exhaust her administrative remedies, failed to establish that she is a qualified individual with a disability, failed to establish that she was discriminated against due to her alleged disabilities, and failed to establish a retaliation claim.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment must be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue to any material facts and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).

When considering a motion for summary judgment, the Court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. Id. at 254-55. The Court may not, however, make credibility determinations or weigh the evidence. Id. at 255.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986) (internal quotation marks omitted). If the moving party meets this burden, the burden shifts to the nonmoving party to go beyond the pleadings and

present specific evidence showing that there is a genuine issue of material fact, or that the moving party is not entitled to judgment as a matter of law. Id. at 324-26. If the evidence that the nonmovant presents, however, is "not significantly probative" or is "merely colorable," then summary judgment may be granted. Anderson, 477 U.S. at 249, 106 S.Ct. at 2511. This evidence must consist of more than mere conclusory allegations. See Avrigan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S.Ct. at 2552.

## III. ANALYSIS

"The [Rehabilitation] Act prohibits federal agencies from discriminating in employment against otherwise qualified individuals with a disability." Mullins v. Crowell, 228 F.3d 1305, 1313 (11th Cir. 2000); see also Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005). Rehabilitation Act claims are analyzed in the same manner as claims brought under the Americans with Disabilities Act ("ADA"). 29 U.S.C. § 7949(d); Cash v. Smith, 231 F.3d 1301, 1305 (11th Cir. 2000); Sutton v. Lader, 185 F.3d 1203, 1207 n. 5 (11th Cir. 1999). The Eleventh Circuit has established that cases decided under the ADA are precedent for cases under the Rehabilitation Act, and vice-versa. Pritchard v. S. Co. Servs., 92 F.3d 1130, 1132 n. 2 (11th Cir. 1996).

**A.     Exhaustion of Administrative Remedies as to Termination Claim**

Before reaching the merits of Plaintiff's claims, the Court must first address Defendant's contention that Plaintiff's claims regarding her termination should be dismissed because she failed to exhaust her administrative remedies. A plaintiff pursuing a claim under the Rehabilitation Act must satisfy the exhaustion of administrative remedies requirements prescribed by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5, 16, 29 U.S.C. § 794a.

"In order to sue in court for violations of Title VII, a plaintiff must exhaust administrative remedies, which means she must receive a right-to-sue letter from the EEOC." Wilkerson v. H & S, Inc., 366 Fed. Appx. 49, 50 (11th Cir. 2010) (citing Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001)); *see also* Rodriguez v. Wet Ink, LLC, 603 F.3d 810, 812 (10th Cir. 2010) ("Both state and federal law require discrimination complainants to receive right-to-sue notices to file private civil actions."); Barzanty v. Verizon PA, Inc., 361 Fed. Appx. 411, 413 (3d Cir. 2010) ("[T]he plaintiff must wait until the EEOC issues a right-to-sue letter before she can initiate a private action."); Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 119 (1st Cir. 2009) (stating that an employee must wait to receive his right-to-sue letter before filing a complaint in federal court); Ferrari v. E-Rate Consulting Servs., 655 F.Supp.2d 1194, 1201 (M.D. Ala. 2009) ("It is well settled that before bringing a Title VII suit in federal court, an aggrieved employee must file a charge of discrimination with the EEOC and obtain a right-to-sue letter.")

There is no dispute that Plaintiff had not received a right-to-sue letter on the EEOC charge relating to her termination prior to filing this lawsuit. However, on October 22, 2010, almost seven months after Defendant filed its Motion for Summary Judgment in which it raised the failure to exhaust argument, and almost two years after commencing this lawsuit, Plaintiff filed a right-to-sue notice dated September 21, 2010.

In the Eleventh Circuit, the "receipt of a right-to-sue letter is not a jurisdictional prerequisite to suit in district court, but rather, is a condition precedent subject to equitable modification." Forehand v. Fl. State Hosp. at Chattahoochee, 89 F.3d 1562, 1568 (11th Cir. 1996) (citation omitted). Because Plaintiff filed her lawsuit before receiving her right-to-sue notice on the termination charge, she must depend upon equitable modification of the exhaustion requirement. See id.

There is "no per se rule that receipt of a right-to-sue letter during pendency of the suit always satisfies the exhaustion requirement." Id. at 1570. The burden is on Plaintiff to show that equitable modification should apply. Here, Plaintiff has presented no evidence and made no claim that she is entitled to equitable modification of the statutory requirement that she receive the right-to-sue notice prior to filing her lawsuit. Contra Fouche v. Jekyll Island State Park Auth., 713 F.2d 1518, 1526 (11th Cir. 1983) (right-to-sue notice requirement waived when the plaintiff diligently attempted to obtain a right-to-sue letter from the Attorney General, who refused to issue the letter to her).

In light of Plaintiff's failure to receive a right-to-sue letter on the termination charge prior to filing suit, and her failure to show that she is entitled to equitable modification of that requirement, the Court finds that Defendant is entitled to summary judgment on all of Plaintiff's termination claims.

## B.  Discrimination Claim

To establish a prima facie case of discrimination under the Rehabilitation Act, Plaintiff must show that she was: (1) disabled or perceived to be disabled; (2) a qualified individual; and (3) discriminated against on the basis of her disability." Ellis, 432 F.3d at 1326.

### 1.  Walking

A "disability" for purposes of the Rehabilitation Act is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Plaintiff contends that she has a physical impairment that substantially limits the major life activity of walking.[1] Defendant contends that Plaintiff has not established that she was disabled

---

[1] In her complaint and deposition, Plaintiff alleged that she suffered from injuries to her ankle and back, and a mental impairment, all of which impaired her ability to perform the major life activities of walking, standing, and working. However, in response to Defendant's Motion for Summary Judgment, which addresses all of the alleged disabilities, Plaintiff only addresses the ankle injury and the major life activities of walking and working. "[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995); *see also* Road Sprinkler Fitters v. Indep. Sprinkler Corp., 10 F.3d 1563, 1568 (11th Cir. 1994) (claims not addressed in response to summary judgment motion deemed abandoned). Accordingly, summary judgment in Defendant's favor on the mental impairment disability claim, back injury disability claim, and claims relating to the major life activity of standing is appropriate.

while employed by the Lowndes DFCS.[2]

The question of disability under the "substantially limits" prong relied upon by Plaintiff involves a three-step analysis. Bragdon v. Abbott, 524 U.S. 624, 631, 118 S.Ct. 2196, 2202 (1998); Rossbach v. City of Miami, 371 F.3d 1354, 1357 (11th Cir. 2004). First, the individual must be impaired. Second, the court must identify the life activity that the individual claims has been limited and determine whether it is a major life activity under the ADA. Finally, the court must determine whether the impairment substantially limits the life activity. In this case, the question is whether the major life activity of walking was limited by Plaintiff's impairments. Rossbach, 371 F.3d at 1357.

The term "substantially limits" means the individual is (1) unable to perform a major life activity that the average person in the general population can perform; or (2) significantly restricted as to the condition, manner, or duration under which she can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1)(i)-(ii). In determining whether an individual is substantially limited in a major life activity, the district court should consider: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the

---

[2]Plaintiff does not argue that she is disabled under the second or third prongs of the disability test as relates to walking. She only contends that she has a physical impairment that substantially limits her walking. Thus, the Court will only address the first prong of the disability test.

expected permanent or long term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2)(i)-(iii). "The terms 'major life activities' and 'substantial limitation' must be 'interpreted strictly to create a demanding standard for qualifying as disabled. . . .'" Gretillat v. Care Initiatives, 481 F.3d 649, 652 (8th Cir. 2007) (quoting Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 197, 122 S.Ct. 681, 691 (2002)). Further, in determining whether a limitation is substantial, the court must take into account any mitigating or corrective measures. Sutton v. United Air Lines, Inc., 527 U.S. 471, 482, 119 S.Ct. 2139, 2146-47 (1999).[3] Although "a person whose physical or mental impairment is corrected by mitigating measures still has an impairment, . . . if the impairment is corrected it does not 'substantially limit' a major life activity." Id. at 483. An individual has not shown that her ability is substantially limited if her functioning is only "moderately below average." Rossbach, 371 F.3d at 1358.

---

[3] Congress enacted major changes to the ADA in 2008, which became effective January 1, 2009. See ADA Amendments Act of 2008, Pub.L. No. 110-325, 122 Stat. 3553 (2008). Through those amendments, Congress rejected the strict standard set forth in Toyota, overruled Sutton, and expressly instructed courts that "[t]he definition of disability in [the ADA] shall be construed in favor of broad coverage of individuals." Id. The Eleventh Circuit held in an unreported decision that the amendments do not apply retroactively, Fikes v. Wal-Mart, Inc., 322 Fed. Appx. 882 (11th Cir. 2009), and a number of other circuit courts have held that the amendments are not retroactive. See Nyrop v. Indep. Sch. Dist. No. 11, 616 F.3d 728, 734 n. 4 (8th Cir. 2010); Becerril v. Pima County Assessor's Office, 587 F.3d 1162, 1164 (9th Cir. 2009); Milholland v. Sumner County Bd. of Educ., 569 F.3d 562, 565 (6th Cir. 2009); E.E.O.C. v. Agro Distrib., LLC, 555 F.3d 462, 469-70 n. 8 (5th Cir. 2009). As the conduct Plaintiff complains about occurred prior to January 1, 2009, the Court will look to the pre-2009 version of the ADA, and the case law interpreting that version of the ADA, in analyzing Plaintiff's claims.

Prior to starting her job with the Lowndes DFCS, Plaintiff worked for the Florida Health Department. While working for that agency in July of 2006, Plaintiff injured her left ankle. Plaintiff saw a physician, but was released to return to work without any restrictions. She was not assigned a disability rating from that injury. When Plaintiff was hired by the Lowndes DFCS in April of 2007, her previous ankle injury was completely healed.

In June of 2007, Plaintiff reported to her supervisor, Patricia Parrish, that prolonged standing and walking were causing a lot of pain in her left ankle, and that the ankle was swollen. Plaintiff testified during her deposition that her ankle started hurting because she had to stand, walk, and carry case files. August 7, 2007 was the first time Plaintiff went to see a doctor about her ankle while working at the Lowndes DFCS.

At her August 7, 2007 appointment at the Hughston Clinic with Kurt Jacobson, M.D., Plaintiff was given certain work restrictions. Dr. Jacobson determined that Plaintiff could lift/carry/push/pull 10 to 25 pounds and could occasionally bend at waist level, kneel, squat, and stand, but Plaintiff was restricted from climbing and prolonged standing for more than 30 minutes with 15 minute breaks. Plaintiff returned to see Dr. Jacobson on September 25, 2007. At that time she was placed on a restriction where she could not climb stairs and could not stand continuously for more than one hour.

Plaintiff's next appointment with Dr. Jacobson was on November 13, 2007. The doctor's note from that visit states: "Please limit walking and standing." On

November 27, 2007, Dr. Jacobson revised the work limitations to where Plaintiff could lift/carry/push/pull 10 to 25 pounds, but limited her to occasional standing and no kneeling or squatting. No specific walking restriction was given at that time. Plaintiff was subsequently released to work with no restrictions by Dr. Jacobson on December 11, 2007.

According to Plaintiff, she was prescribed a cane in February of 2008.[4] In March of 2008, Plaintiff was also seeing C. Allen Woods, M.D., for her ankle.[5] Dr. Woods saw Plaintiff on March 10, 2008, and on March 11, 2008, he released Plaintiff to return to regular duty work with no restrictions.

Plaintiff subsequently underwent a physical capacities evaluation on March 24, 2008. She was given an impairment rating of 9% to her lower extremity and 4% to her whole person. During the simulated work environment ability test given as part of the evaluation, it was determined that Plaintiff could sit for four hours, stand for two hours, and walk for two hours each eight-hour work day with breaks every two to three hours. Plaintiff was released to return to work by Dr. Jacobson on April 1, 2008, subject to the physical capacities evaluation restrictions.

Plaintiff returned to see Dr. Woods on April 10, 2008, and he released her to return to work on April 14, 2008 with no restrictions. Dr. Woods next saw Plaintiff on

---

[4]The Court is not aware of any document in the record showing a prescription for a cane.

[5]Plaintiff claims in her affidavit in opposition to Defendant's Motion for Summary Judgment that she does not remember who Dr. Woods is, but according to her medical records, Plaintiff saw Dr. Woods at least five times over a three month period in 2008. Plaintiff has not challenged the authenticity of the medical records from Dr. Woods.

April 18, 2008, and he released her to return to work on April 22, 2008 with no restrictions.

Plaintiff saw Larry E. Smith, M.D., on April 21, 2008. No restrictions were given, and Plaintiff was referred to physical therapy. Dr. Smith noted that Plaintiff "had functional impairment assessment done, and she was *only* found to have 9% impairment in her lower extremity and 4% for the whole body." (emphasis added). Plaintiff returned to see Dr. Smith on May 8, 2008 for depression. No restrictions with regard to walking were issued.

Plaintiff was seen by Dr. Woods on May 8, 2008, and he released her to work on May 19, 2008 with no restrictions. Plaintiff returned to see Dr. Smith on May 19, 2008 with complaints of left ankle pain. No restrictions with regard to walking were issued by Dr. Smith at that time. Plaintiff was next seen by Dr. Woods on May 19, and was released to work on May 27, 2008 with no restrictions. Dr. Smith completed a Certification of Serious Health Condition for Plaintiff on May 15, 2008, in which he recommended "[l]ess climbing and bending and walking. Less stress."

Plaintiff fell at work on June 11, 2008 and injured her neck and back. On June 16, 2008, Plaintiff was released to return to light duty work by Valdosta Family Medicine Associates, the workers' compensation provider who treated Plaintiff after her fall. Plaintiff was given restrictions of no lifting greater than five pounds, no bending or twisting at the waist, and no overhead reaching. She was also directed to use a neck splint. On June 19, 2008, Plaintiff received work restrictions from Dr. Smith under which she was prohibited from reaching, bending or climbing. Plaintiff

was also restricted to walking or standing for one hour in an eight-hour period. On July 1, 2008, Plaintiff presented to Dr. Smith with complaints of neck pain. Dr. Smith's treatment plan was to start physical therapy, restrict Plaintiff's lifting to less than ten pounds, and restrict bending, reaching, walking, and standing. On August 20, 2008, Dr. James Goss, Plaintiff's orthopedist, determined Plaintiff was unable to work from that day until further notice. Dr. Goss released Plaintiff to return to modified work duty on September 10, 2008. He stated that Plaintiff should "[l]imit walking and standing. Sedentary work only."

In a footnote contained in her affidavit in opposition to the Motion for Summary Judgment, Plaintiff states she was "substantially limited in my ability to walk in that I could not walk more than 150 to 200 feet without needing to rest. I was walking with a cane in the late 2007, early 2008 time period." Plaintiff testified during her deposition that her husband had to do their grocery shopping, and her sister had to help her clean the house. On the other hand, while working for the Lowndes DFCS, Plaintiff did not have a handicapped sticker for her car. She never requested a special parking place close to the building. Plaintiff testified that she had trouble walking from the parking lot to the building, but that was because she had to carry case files with her at times. Plaintiff also acknowledged that her ankle in fact improved while working at the Lowndes DFCS.

Based on the evidence before it, the Court finds that Plaintiff did not suffer from a disability as defined by the Rehabilitation Act or ADA. It is Plaintiff's burden to establish that she is disabled, and she has not done so. There is no evidence as

to the duration or expected duration of Plaintiff's impairment. Also, while Plaintiff testified by affidavit that she could only walk 150 to 200 feet before having to stop and rest, she does not state whether that limitation was during the relevant time period, and she never states how long she had to rest, whether she had to sit down and rest, or whether that involved walking with or without a cane. While Plaintiff used a cane while working at the Lowndes DFCS, there is no evidence it was medically prescribed, and there is no evidence in the record of how often Plaintiff had to use the cane during the relevant time period. Even assuming Plaintiff used a cane most of the time, the evidence shows that Plaintiff could walk with the assistance of the cane, which mitigates her physical impairment. It is also telling that Plaintiff did not have a handicapped parking pass during her employment with the Lowndes DFCS. The fact she has one now is irrelevant to the Court's analysis, as the relevant time period is when the alleged discrimination occurred. *See* Cash, 231 F.3d at 1306 n. 5 ("The fact that Cash was eventually hospitalized for depression in July and September of 1998 is irrelevant to this case. The employment action that Cash is complaining of occurred in late April and early May of 1998, and we evaluate her disability as manifested at that time.)

Also important is the fact there is no evidence pointed to by Plaintiff to show that the impairment is permanent or will have a long term impact. Looking at Plaintiff's medical records, and in fact her own testimony, it is clear that her ankle improved at times, to the point where she was on several occasions released to work without any walking restrictions, or any work restrictions at all. None of

Plaintiff's medical records indicate that the physical limitations would be long-term or permanent, and at no time was Plaintiff ever given any permanent medical restrictions. Similar to the plaintiff in Plant v. Morton International, Inc., 212 F.3d 929 (6th Cir. 2000), Plaintiff has not come forward with any evidence that her impairment is permanent, and the "mere possibility of recurrence is not sufficient to establish substantial impairment." Id. at 938.

Further, Plaintiff's impairment ratings weigh against a finding of a disability. Plaintiff was given a 9% impairment rating for her lower extremity and a 4% impairment rating for her entire body. That degree of limitation does not rise to the level of a substantial limitation. See Penny v. United Parcel Serv., 128 F.3d 408, 416 (6th Cir. 1997) (a plaintiff with a 14% total body impairment who experienced difficulty walking was not disabled under the ADA); Rogers v. Int'l Marine Terminals, Inc., 87 F.3d 755, 759 (5th Cir. 1996) (a plaintiff who suffered from a permanent whole-body impairment of 13% was not disabled under the ADA); Piascyk v. City of New Haven, 64 F.Supp.2d 19, 27 (D.Conn. 1999) (holding that even if the 20% impairment in the plaintiff's leg and 10% in his back were aggregated and translated into a 30% limitation on the plaintiff's ability to walk, that limitation did not rise to the requisite level of substantiality to qualify as a disability under the ADA).

As Plaintiff has not shown that she was disabled with regard to her ability to walk during the time period when the alleged discrimination occurred, she is unable to make a prima facie case of discrimination under the Rehabilitation Act. It is not necessary for the Court to address whether Plaintiff was a qualified individual or

discriminated against on the basis of her disability. Defendant is entitled to summary judgment on Plaintiff's discrimination claim as relates to walking.

### 2. Lifting

In her response to Defendant's Motion for Summary Judgment, Plaintiff contends that she was also substantially limited in the major life activity of lifting in that she had a ten-pound lifting restriction, which was subsequently reduced to five pounds. The Eleventh Circuit has held a number of times that a limitation on a person's ability to lift things does not qualify as a substantial limitation for purposes of the ADA. *See* Carr v. Publix Super Markets, Inc., 170 Fed. Appx. 57, 60-61 n. 3 (11th Cir. 2006) ("[W]e doubt that a lifting limitation states a *per se* ADA disability."); Hillburn v. Murata Elec. N. Am., Inc., 181 F.3d 1220, 1227-28 (11th Cir. 1999) (plaintiff's allegations of a disability based on a ten pound lifting restriction did not create a prima facie case for a disability).

Even assuming a lifting restriction qualifies as a substantial limitation, Plaintiff's lifting claim fails for another reason. Plaintiff has attempted to add the lifting claim through her response to Defendant's Motion for Summary Judgment. The lifting claim is not contained in her original complaint, and no attempt to amend the complaint was ever made. Plaintiff will not be permitted to raise the lifting claim for the first time in her response brief, as this deprives Defendant of the proper notice of the claim, as well as the opportunity to develop a defense. Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir.2004) ("[P]laintiff may not amend her complaint through argument in a brief opposing summary judgment."); Iraola &

CIA, S.A. v. Kimberly-Clark Corp., 325 F.3d 1274, 1286 (11th Cir.2003) (claims not raised in a complaint cannot be raised for the first time in plaintiff's response to defendant's motion for summary judgment). Accordingly, Defendant is entitled to summary judgment on Plaintiff's discrimination claim as relates to lifting.

### 3. Working

As previously noted, a "disability" for purposes of the Rehabilitation Act is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Plaintiff contends that Defendant regarded her as substantially limited in the major life activity of working.[6]

A plaintiff may be "regarded as" disabled in two ways: "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." Sutton, 527 U.S. at 489, 119 S.Ct. at 2149-50. To show that Defendant regarded Plaintiff as being substantially limited in her ability to work, Plaintiff must demonstrate that Defendant thought she was unable to perform "either a class of jobs or a broad range of jobs as compared to the average person having comparable training, skills

---

[6]Plaintiff does not argue that she is disabled under the first or second prongs of the disability test as relates to working. She only contends that Defendant regarded her as substantially limited in the activity of working. Thus, the Court will only address the third prong of the disability test.

and abilities." <u>Carruthers v. BSA Adver., Inc.</u>, 357 F.3d 1213, 1216 (11th Cir. 2004). This means Plaintiff must demonstrate not only that Defendant thought she was disabled, but also that Defendant thought her disability would prevent her from performing a broad class of jobs. <u>Ross v. Campbell Soup Co.</u>, 237 F.3d 701, 709 (6th Cir. 2001). It is not enough to show that Defendant thought Plaintiff could not perform a single, particular job, nor is it sufficient if Plaintiff merely shows that Defendant was aware of her impairment. <u>Id.</u> at 1216-17.

Plaintiff points to one thing to support her argument that Defendant regarded her as unable to perform a class of jobs or a broad range of jobs - the fact that on June 23, 2008, Defendant placed Plaintiff on Family and Medical Leave ("FMLA leave") after Dr. Smith placed Plaintiff on a medical restriction under which she could only walk one hour per day. There are two reasons why Plaintiff's "regarded as" theory fails.

### i. Placing Plaintiff on FMLA leave

Placing an employee on FMLA leave does not mean that an employer regards the employee as disabled for ADA purposes. "ADA's 'disability' and FMLA's 'serious health condition' are different concepts, and must be analyzed separately." 29 C.F.R. § 825.702(b). Further, "[t]he leave provisions of the [FMLA] are wholly distinct from the reasonable accommodation obligations of employers covered under the ADA." 29 C.F.R. § 825.702(a).

A number of courts have addressed the issue of whether an employer regarded an employee as disabled because FMLA leave was permitted or required.

In Nealey v. Water District No. 1 of Johnson County, 324 Fed. Appx. 744, 749 (10th Cir. 2009), the plaintiff argued that the defendant regarded her as disabled in part because the defendant approved her FMLA leave requests. The Tenth Circuit held that approval of FMLA leave requests cannot in and of itself support an inference that the defendant regarded the plaintiff as disabled for ADA purposes. The Third Circuit reached a similar result in Robinson v. Lockheed Martin Corp., 212 Fed. Appx. 121, 125-26 (3d Cir. 2007), holding that the defendant's statement that the plaintiff should apply for FMLA leave did not create a material issue of fact that the plaintiff was regarded as significantly restricted in his ability to work. See also Berry v. T-Mobile USA, Inc., 490 F.3d 1211, 1218-19 (10th Cir. 2007) (holding that the defendant's approval of an FMLA leave request did not establish a question of fact as to whether the defendant regarded the plaintiff as disabled); Levine v. Smithtown Cent. Sch. Dist., 565 F.Supp.2d 407, 426 (E.D.N.Y. 2008) (holding that affording the plaintiff a paid leave of absence did not indicate a perception that the plaintiff was substantially impaired in a major life activity); Ellis v. Mohenis Servs., Inc., No. Civ. A. 96-6307, 1998 WL 564478, at *5 (E.D. Pa. Aug. 24, 1998) (holding that even if the defendants forced the plaintiff to take FMLA leave or believed taking such leave was proper under the circumstances, that was not evidence that the defendants regarded the plaintiff as disabled, as "an employee who has a 'serious health condition' for purposes of the FMLA is not necessarily 'disabled' under the ADA").

The Court finds an opinion authored by Judge Longstaff of the Southern District of Iowa to be particularly pertinent to this discussion. In Heyne v. HGI-

Lakeside, Inc., 589 F.Supp.2d 1119 (S.D. Iowa 2008), Judge Longstaff was faced with a case where a table games dealer at a casino suffered from chronic back pain. The plaintiff's doctor recommended that the plaintiff be restricted to standing for two hours at a time with a period of one hour of sitting or resting in between periods of standing. The defendant eventually informed the plaintiff that it was unwilling to accommodate the standing restrictions, and that he needed to be able to stand for an entire eight-hour shift. The defendant placed the plaintiff on forced, unrequested medical leave, and told him that he would have three months to be in a position to stand up and deal as required. Id. at 1121-22.

The plaintiff filed a lawsuit alleging disability discrimination and retaliation in violation of the ADA. Among other things, the plaintiff alleged that the defendant regarded him as being disabled. His only argument on that issue was that "the forced, unrequested placement of the Plaintiff on FMLA leave speaks volumes about the attitude of the Defendant." Id. at 1125. In response to that statement, Judge Longstaff wrote:

> The Court fails to see why placing him on forced, unrequested medical leave suggests that HGI regarded Heyne as disabled. If anything, placing Heyne on medical leave suggests that HGI believed Heyne to be capable of performing his assigned job responsibilities - *i.e.* to stand and deal for the majority of his shift - and that he simply needed time off to restore his health.

Id. at 1125-26.

In a subsequent footnote, Judge Longstaff stated:

> This Court struggles to understand why an employer would place an employee on FMLA leave - a vehicle designed specifically to allow an employee to take time to restore his health, without penalty, to a point where he can again perform his job again - if the employer regarded the employee as being disabled. The suggestion made by Heyne appears to be that HGI *knew* that Heyne could never be able to stand and deal for his entire shift, and therefore, HGI was constructively discharging him by placing him on FMLA leave. Even if true, it does not establish that Heyne was "regarded" as disabled. While such actions may be regarded as insensitive or unfair, they do not establish that HGI mistakenly believed that Heyne had a physical impairment that substantially limits one or more major life activities, or that HGI mistakenly believed that an actual, non-limiting impairment substantially limits one or more major life activities.

Id. at 1126 n. 10 (emphasis in original).

The Court agrees with Judge Longstaff and the multitude of other courts who have determined that placing an employee on leave, or granting a request for leave, does not mean that the employer regarded the employee as disabled. Here, as this is only evidence presented by Plaintiff regarding this claim, the Court is compelled to find that she has not met her burden of showing that Defendant regarded her as disabled with regard to her ability to work. Defendant is entitled to summary judgment on Plaintiff's discrimination claim as relates to working.

**ii.     Class or broad range of jobs**

Even though the Court has already determined summary judgment on the working claim is proper, the other reason Plaintiff's "regarded as" claim fails should be mentioned. To meet the "regarded as" definition of disabled, Plaintiff must prove

that Defendant considered her "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." 29 C.F.R. § 1630.2(j)(3)(i). Plaintiff has referred the Court to no such evidence. In fact, the notice given to Plaintiff advising her that she was being placed on FMLA leave refers only to her specific position and the fact that her medical restriction would prevent her from performing that job. There is no suggestion that Defendant viewed Plaintiff as incapable of performing a wider range of jobs than that of Error Control Specialist. The inability to perform that one job does not constitute a substantial limitation in the major life activity of working. Id. Plaintiff has failed to create a genuine issue of material fact that Defendant perceived her to be disabled with regard to working, entitling Defendant to summary judgment. *See* Bailey v. Georgia-Pacific Corp., 306 F.3d 1162, 1170 (1st Cir. 2002) (holding that since the plaintiff adduced no evidence that his employer thought he was unfit for either a class or a broad range of jobs, his "regarded as" claim of disability failed).

### C.    Retaliation

Plaintiff's final claim is a retaliation claim. The Rehabilitation Act incorporates the ADA's anti-retaliation provision, which provides, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter." *See* 29 U.S.C. §§ 791(g), 793(d), 794(d). This provision is similar to Title VII's anti-retaliation provision, and the Court assesses Rehabilitation Act retaliation claims under the same framework used for Title VII

retaliation claims. <u>Shannon v. Postmaster Gen. of U.S. Postal Serv.</u>, 335 Fed. Appx. 21, 26 (11th Cir. 2009).

Plaintiff contends she was retaliated against for filing two charges with the EEOC.[7] She must first establish a prima facie case of retaliation. To do so, Plaintiff has to show that: (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there was some causal relationship between the two events. <u>Holifield v. Reno</u>, 115 F.3d 1555, 1566 (11th Cir. 1997). Filing an EEOC claim is a statutorily protected activity, <u>Goldsmith v. Bagby Elevator Co., Inc.</u>, 513 F.3d 1261, 1277 (2008), so the Court need only concern itself with the second and third prongs of the retaliation test.

For an action to be an adverse employment action, the plaintiff must show that an ultimate employment decision was made, or must make some other showing of substantiality. <u>Crawford v. Carroll</u>, 529 F.3d 961, 970 (11th Cir. 2008). An ultimate employment decision has been defined as those "such as termination, failure to hire, or demotion." <u>Id.</u> (quoting <u>Stavropoulous v. Firestone</u>, 361 F.3d 610, 617 (11th Cir. 2004)). For conduct falling short of an ultimate employment decision, the conduct must, in some substantial way, "alter[ ] the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment

---

[7]Plaintiff also contends that her termination was in retaliation for engaging in  protected activity. As discussed above, Plaintiff failed to exhaust her administrative remedies as to the termination claim prior to filing suit, and has not shown that she is entitled to equitable modification of that requirement. Thus, the Court will not discuss Plaintiff's termination as it relates to her retaliation claim.

opportunities, or adversely affect [ ] his or her status as an employee." Id. (quoting Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000)). When defining the level of substantiality required for a Title VII retaliation claim, the Eleventh Circuit determined that an employee must demonstrate she suffered "a *serious and material* change in the terms, conditions, or privileges of employment" to show an adverse employment action. Id. at 971 (citing Stavropoulous, 361 F.3d at 617; Bass v. Bd. of Cty. Comm'rs, Orange County, Fla., 256 F.3d 1095, 1118 (11th Cir. 2001); Gupta, 212 F.3d at 588; Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1456 (11th Cir. 1998); Benefield v. Fulton County, Ga., 130 Fed. Appx. 308 (11th Cir. 2005)). An adverse employment action is one that "clearly might deter a reasonable employee from pursuing a pending charge of discrimination or making a new one." Id. at 574.

With regard to the causal relationship, a plaintiff has to demonstrate that the protected activity and the adverse action are not completely unrelated. Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004). "A plaintiff satisfies this element if she provides sufficient evidence that her employer had knowledge of the protected expression and 'that there was a close temporal proximity between this awareness and the adverse action.'" Burgos v. Napolitano, 330 Fed. Appx. 187, 190 (11th Cir. 2009) (quoting Higdon, 393 F.3d at 1211 (quotation and ellipsis omitted)).

If a plaintiff establishes a prima facie case of retaliation, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action. Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001) (citation omitted). "[T]o satisfy this intermediate burden, the employer need

only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997) (quotation omitted). If the employer can show a legitimate, non-retaliatory reason for the action, the burden shifts to the plaintiff to show by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct. Id.

### 1. November 2007 Charge

Plaintiff filed her first discrimination charge on November 12, 2007 (the "November 2007 Charge"), which she subsequently withdrew because it appeared Defendant was going to accommodate her. Prior to filing the November 2007 Charge, Plaintiff worked in the Food Stamps and Medicaid applications unit, where she was required to process both of those applications. In December 2007, Plaintiff was moved to a position where she took Medicaid applications only, a job that required less walking than the dual application job. Plaintiff had no problems while in the Medicaid applications position, and contends that she told Ms. Parrish, her supervisor, she wanted to remain in that position permanently as an accommodation. However, Plaintiff was moved from the Medicaid applications unit back to the Food Stamps and Medicaid applications unit in April of 2008. Shortly thereafter, on May 7, 2008, Plaintiff was given a written Documentation of Counseling because she contacted a specialist after Ms. Parrish documented an error with regard to one of Plaintiff's cases and Plaintiff did not agree with Ms.

Parrish's assessment of her work.[8] While it is not completely clear from Plaintiff's response to Defendant's Motion, it appears Plaintiff contends that moving her back into the Food Stamps and Medicaid applications unit and the May 7, 2008 Documentation of Counseling were both done in retaliation for the November 2007 Charge.

Defendant argues that with regard to the November 2007 Charge, Plaintiff did not suffer an adverse employment action, or, in the alternative, there was no causal relationship between the protected expression and the employment action. The Court agrees that Plaintiff has not met either of these prongs of the prima facie test.

For an action to be an adverse employment action, the plaintiff must show that an ultimate employment decision was made or make some other showing of substantiality. Crawford, 529 F.3d at 970. Further, to constitute an adverse employment action, the conduct must be such that it "clearly might deter a reasonable employee from pursuing a pending charge of discrimination or making a new one." Id. at 974. Here, Plaintiff filed a new EEOC charge on May 13, 2008, after receiving the Documentation of Counseling and after being moved back into the Food Stamps and Medicaid applications unit. Clearly Plaintiff was not deterred from making a new charge of discrimination. As Plaintiff herself was not dissuaded from making a discrimination claim, the Court will not find that a reasonable employee would have been dissuaded from making a claim. See Shannon, 335 Fed. Appx. at 27 (the fact that the plaintiff filed his last two EEOC complaints after the alleged

---

[8]That Documentation of Counseling was rescinded on June 18, 2008.

adverse action casted doubt on whether the actions were the sort that might have dissuaded a reasonable worker from making a charge of discrimination); <u>Burgos</u>, 330 Fed. Appx. at 190 (holding that the defendant's actions were not materially adverse because the evidence showed that the plaintiff was not deterred in reinstating her EEOC claim); <u>Glass v. Intel Corp.</u>, No. CV-06-1404, 2009 WL 649787, at *9 (D.Ariz. March 11, 2009) (holding that a reasonable worker would not have been dissuaded from making a discrimination charge, as the plaintiff himself filed an EEOC charge only days after one of the allegedly retaliatory actions); <u>McWhite v. New York City Hous. Auth.</u>, No. 05-cv-0991, 2008 WL 1699446, at *13 (E.D.N.Y. Apr. 10, 2008) (holding that the plaintiff's pursuit of an EEOC claim despite the defendant's retaliatory actions indicated that plaintiff did not suffer a materially adverse action).[9]

    As for the causal relationship, Plaintiff has not shown a close temporal proximity between the November 2007 Charge and the employment actions. Plaintiff was moved from the Medicaid application position back to the Food Stamps and Medicaid application unit in April of 2008, five months after filing the November 2007 Charge. She received the Documentation of Counseling in May of 2008, six months after filing the November 2007 Charge. The Eleventh Circuit has held in a number of cases that time periods less than or equal to five or six months do not meet the

---

[9]The retaliation claim involving the November 2007 Charge also fails the "materially adverse" prong because Plaintiff has not shown that either the Documentation of Counseling or the move back to the Food Stamps and Medicaid application unit constituted or resulted in a serious and material change in the terms, conditions, or privileges of her employment. *See* <u>Davis v. Town of Lake Park, Fla.</u>, 245 F.3d 1232, 1238 (11th Cir. 2001).

temporal proximity requirement for a retaliation claim. *See* <u>Thomas v. Cooper Lighting, Inc.</u>, 506 F.3d 1361, 1364 (11th Cir. 2007) (three-month period insufficient); <u>Drago v. Jenne</u>, 453 F.3d 1301, 1308 (11th Cir. 2006) (three-month period insufficient); <u>Sicilia v. United Parcel Serv., Inc.</u>, 279 Fed. Appx. 936, 940 (11th Cir. 2008) (four-month period insufficient); <u>Hammons v. George C. Wallace State Comm. Coll.</u>, 174 Fed. Appx. 459, 464 (11th Cir. 2006) (five-month period insufficient); <u>Higdon</u>, 393 F.3d at 1221 (three-month period insufficient). Other circuit courts have reached similar conclusions. *See* <u>Blume v. Potter</u>, 289 Fed. Appx. 99, 106 (6th Cir. 2008) (six-month period insufficient); <u>Andreoli v. Gates</u>, 482 F.3d 641, 650 (3d Cir. 2007) (five-month period insufficient); <u>Richmond v. ONEOK, Inc.</u>, 120 F.3d 205, 209 (10th Cir. 1997) (three-month period insufficient).

As Plaintiff has not established that she suffered an adverse employment action or shown a causal relationship between the protected activity and the employment action, she has not made a prima facie retaliation claim as relates to the November 2007 Charge. Defendant is entitled to summary judgment on that retaliation claim.

### 2. May 2008 Charge

Plaintiff filed her second discrimination charge on May 13, 2008 (the "May 2008 Charge"). On May 19, 2008, Plaintiff received a Memorandum of Concern and Expectations from Defendant, which documented the following concerns: (1) "poor customer service," "argumentative and inappropriate behavior," "failure to work when scheduled," "failure to show the flexibility required of an Error Control Specialist," and

"resistance to supervision"; (2) two complaints from Hispanic customers that Plaintiff "lectured them about being undocumented aliens when they were applying for benefits for their children who are U.S. citizens"; (3) being argumentative with her supervisors about legitimate assignments which were within the requirements of her position; and (4) establishing a pattern of calling in sick when she was given assignments that she did not wish to perform, which caused "a serious detrimental effect on the operation of the department."[10] The Memorandum of Concern was replaced by a Written Reprimand and Final Warning dated May 27, 2008. The Written Reprimand stated the following: (1) Plaintiff was "rude, intimidating, condescending, judgmental, and unprofessional" with an undocumented Hispanic client who was legitimately applying for benefits for her children; (2) Plaintiff failed to get permission on April 17, 2008 to work overtime as instructed; (3) Plaintiff's excessive absenteeism had a significant impact on the operation of the office; and (4) Plaintiff was establishing a pattern of argumentative behavior and resistance to supervision, including disagreeing with and challenging legitimate supervisory assignments.[11] Plaintiff was placed on FMLA leave on June 23, 2008. While it is again not exactly clear, Plaintiff appears to contend that the Memorandum of Concern and Written Reprimand, along with placing her on FMLA leave, were all

---

[10]Plaintiff acknowledges receiving the Memorandum of Concern, but denies any of the complaints contained in it are valid.

[11]Plaintiff acknowledges receiving the Written Reprimand, but denies that any of the complaints in it are true.

done in retaliation for the May 2008 Charge.[12] The Court will address the Memorandum of Concern and Written Reprimand first.

### i.    Memorandum of Concern and Written Reprimand

Defendant argues that the Memorandum of Concern and Written Reprimand could not have been done in retaliation for the May 2008 Charge because those actions were contemplated prior to Plaintiff filing the charge. The Court agrees. The Eleventh Circuit has established a rule in retaliation cases that "when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation." Drago, 453 F.3d at 1308. Plaintiff relies on the fact that the Memorandum of Concern was issued six days after she filed the May 2008 Charge to show causation. However, the undisputed evidence shows that the complaints contained in the Memorandum of Concern and Written Reprimand were first discussed amongst Plaintiff's supervisors, Virginia Boswell, Patricia Parrish, and Joni Reece, and Dee Brooks, an employee relations analyst for Defendant, on May 1, 2008.[13] The Memorandum of

---

[12]While Plaintiff also contends that her termination was in retaliation for the May 2008 Charge, for the reasons previously discussed, that issue will not be addressed.

[13]Plaintiff states in her response to Defendant's statement of undisputed material facts that she is without knowledge as to whether Mss. Boswell, Parrish, and Reece contacted Ms. Brooks in May of 2008. Under Local Rule 56, "[t]he response that a party has insufficient knowledge to admit or deny is not an acceptable response unless the party has complied with the provisions of Rule 56(f) of the Federal Rules of Civil Procedure." Plaintiff has not complied with Rule 56(f), which means the statement of fact is admitted. In any event, there is an email in the record from Ms. Boswell to Ms. Brooks dated May 1, 2008 discussing the alleged problems with Plaintiff, and Plaintiff has not disputed the authenticity of that document.

Concern was actually drafted by Ms. Brooks and sent to Mss. Boswell, Parrish, and Reece for review on May 7, 2008. It appears Plaintiff did not receive the Memorandum of Concern until May 19, 2008 because she was out on leave from May 8 until May 19, 2008.[14] As the alleged adverse employment actions were clearly contemplated before the May 2008 Charge was filed, Plaintiff cannot establish a retaliation claim based on the Memorandum of Concern and Written Reprimand.

### ii.    Being placed on FMLA leave

Defendant argues that Plaintiff's claim that Defendant placed her on FMLA leave in retaliation for filing the May 2008 Charge fails because placing Plaintiff on FMLA leave does not constitute an adverse employment action. Upon review of the evidence with regard to Plaintiff's FMLA leave, the Court cannot agree with Defendant.

As discussed above, an adverse employment action for purposes of a Title VII retaliation claim is one that alters, among other things, the employee's compensation. Gupta, 212 F.3d at 588. The notice given to Plaintiff on June 23, 2008 informing her she was being placed on FMLA leave states:

> Therefore, due to your serious health condition, you are being placed on family and medical leave as of the close

---

[14]The Supreme Court has also held that "[e]mployers need not suspend previously planned [adverse employment actions] upon discovering [protected activity]." Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 272, 121 S.Ct. 1508, 1511 (2001) (holding that if, after discovering protected activity, an employer proceeds "along lines previously contemplated, though not definitely determined," its actions are not evidence of causality). Thus, even assuming Defendant received notice of the May 2008 Charge prior to giving Plaintiff the Memorandum of Concern on May 19, 2008, Defendant was not required to abandon its decision to give the Memorandum and subsequent Written Reprimand to Plaintiff.

of business on 6/23/2008. Your leave balances at close of business on 6/23/2008, are .467 hours of sick leave, and 5 hours of annual leave. If you wish to use paid leave in conjunction with family leave, you will need to submit a request detailing the type of leave you wish to use. For any portion of this period in which you qualify for family leave, but do not have paid leave time available, you will be placed on family and medical leave without pay.

(Doc. 30-26, p. 4).

When Plaintiff was put on FMLA leave, she had less than one day's worth of paid leave available to her. Thus, she was in effect put on leave without pay. Other courts have held that requiring an employee to take leave without pay could be considered an adverse employment action as it directly affects the employee's compensation. *See, e.g.,* Tysinger v. Police Dept. of City of Zanesville, 463 F.3d 569, 573 (6th Cir. 2006) (holding that the district court was correct in determining that plaintiff was subjected to an adverse employment decision when the defendant required her to take an extended leave of absence, partly without pay); Andrews v. The Geo Group, Inc., No. 06-cv-00844, 2007 WL 3054967, at *6 (D. Colo. Oct. 18, 2007); Kinsey v. City of Jacksonville, No. 3:01CV785, 2005 WL 3307211, at * 8 (M.D. Fla. Dec. 6, 2005), *aff'd* 189 Fed. Appx. 860 (11th Cir. 2006); Knight v. Computer Sci. Raytheon, No. 6:00CV1563ORL28DAB, 2002 WL 32818520, at *14 (M.D. Fla. Oct. 25, 2002) (noting that "being placed on . . . unpaid medical leave can be considered [an] adverse employment action, . . . "). The Court agrees with the reasoning of these courts, and finds that under the circumstances present in this

case, placing Plaintiff on FMLA leave could be considered an adverse employment action.[15]

As Plaintiff has established a prima facie case of retaliation relating to being placed on FMLA leave,[16] Defendant now has to articulate a legitimate, non-retaliatory reason for the challenged employment action. Pennington, 261 F.3d at 1266. If Defendant meets that burden, Plaintiff must show by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct. Id.

Defendant states that Plaintiff was placed on FMLA leave because it could not accommodate her medical restrictions. At the time Plaintiff was placed on FMLA leave, she was working in the Food Stamp and Medicaid applications unit. Plaintiff had been moved back to that unit because the Lowndes DFCS had four uncovered caseloads in that unit, and part of Plaintiff's job as an Error Control Specialist was to assist with uncovered caseloads. Defendant determined that the medical restriction which allowed Plaintiff to only walk for one hour per day would prevent her

_____

[15]In no way is the Court establishing a rule that every time an employee is placed on leave, that action constitutes an adverse employment action. Like all inquiries related to Title VII cases, such a decision must be based on the specific facts of the case before the Court, and because Plaintiff was placed on leave when she had less than one day's worth of paid leave available, the Court believes an adverse employment action has been shown.

[16]By filing an EEOC charge, Plaintiff engaged in statutorily protected expression. As discussed above, Plaintiff suffered an adverse employment action when Defendant placed her on FMLA leave. Finally, the approximately six-week period between the filing of the May 2008 Charge and Defendant placing Plaintiff on FMLA leave is short enough to establish a causal relationship between the two events. See Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1171-72 (10th Cir. 2006) (in a FMLA retaliation case, an adverse action within six weeks of protected action was close enough in time to establish the causal connection element of a prima facie case).

from performing the essential functions of her job as an Error Control Specialist, and put her on FMLA leave. Further, Plaintiff also had a restriction under which she needed "less stress," and the only way to accommodate that restriction was to put Plaintiff on FMLA leave.

Defendant has articulated legitimate, non-discriminatory reasons for placing Plaintiff on leave. Now Plaintiff must show that these were merely pretexts for unlawful retaliation. Plaintiff may avoid summary judgment and show pretext directly by persuading the Court that a discriminatory reason more likely motivated Defendant, or indirectly by showing that Defendant's proffered explanation is unworthy of credence. *See* Combs, 106 F.3d at 1528. In this case, Plaintiff has not shown pretext directly or indirectly. She has presented no evidence that her complaints of discrimination played any part in the decision to place her on FMLA leave. Instead, it appears that Defendant's decision to put Plaintiff on leave was based on records from Plaintiff's physicians stating that she had a limited ability to walk and needed less stress overall. Plaintiff has directed the Court to nothing with regard to the FMLA leave that would allow a reasonable jury to conclude there was any connection between the May 2008 Charge and placing Plaintiff on FMLA leave. Defendant is entitled to summary judgment on the retaliation claim relating to the May 2008 Charge and the FMLA leave.

## IV.    CONCLUSION

For the reasons discussed above, the Court finds that Defendant is entitled to summary judgment on all of Plaintiff's claims. The Motion for Summary Judgment (Doc. 30) is granted.


**SO ORDERED**, this the 8th day of November, 2010.

/s/ Hugh Lawson
**HUGH LAWSON, SENIOR JUDGE**


mbh